## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JAMES EARL**                                          **CIVIL ACTION**

**VERSUS**                                               **NO.  17-4723**

**ROBERT TANNER, WARDEN**                      **SECTION "A"(2)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, James Earl, is incarcerated in the Rayburn Correctional Center in Angie, Louisiana.[2]  On March 18, 2011, Earl was charged by bill of indictment in Washington Parish with one count of second degree murder in violation of La. Rev. Stat. § 14:30.1 and one count of conspiracy to commit second degree murder in violation of La. Rev. Stat. § 14:26:30.1.[3]  The Louisiana First Circuit Court of Appeal summarized the facts determined at trial as follows in relevant part:

> On the night of January 6, 2001, Richie Martin was parked in a Geo Tracker in a driveway on Jenkins Road in Washington Parish.  Raymond Terry Lyons was in the front passenger seat of the Tracker, and two men were waiting for someone.  Ricky Magee, who had driven a black Malibu from his house, pulled into the driveway near the Tracker.  Magee's front-seat passenger was the defendant.  Donald Dawson (aka "Pee Wee"), who had been at Magee's house looking to buy drugs, was driving a white Buick and had followed Magee and the defendant, as Magee had instructed.  After Magee parked, Dawson, whose passenger was his girlfriend, Tessie Starnes, parked about thirty feet away in the driveway next to Magee.  The defendant, Magee, and Dawson each got out of their respective vehicles and approached the Tracker.
>
> According to several eyewitness accounts, either the defendant or Magee struck Lyons with a board or piece of wood, identified by most as a "2x4."  The defendant then shot Lyons once in the chest, killing him.  Martin got out of the Tracker, ran to a nearby trailer, and called 911.  The defendant, Magee, and Dawson got in their vehicles and left the scene.  When the defendant was interviewed by Detective (now, Captain) Jim Miller, with the Washington Parish Sheriff's Office, the defendant admitted that he shot Lyons.  At trial, the defendant testified that he lied about shooting Lyons because he was afraid of Magee.  The defendant testified that he struck Lyons with his hands, but that it was Dawson who shot Lyons.

---

[2]Rec. Doc. No. 7.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 5/1/09.  Co-defendants Ricky Magee and Donald Dawson were also indicted for second degree murder and both pled guilty to manslaughter.

State v. Earl, No. 2015 KA 1383, 2016 WL 3146011, at *1 (La. App. 1st Cir. June 6, 2016); State Record Volume 3 of 4, Louisiana First Circuit Court of Appeal Opinion, 2015 KA 1383, pages 2-3, June 6, 2016.

Earl was tried before a jury for the charge of second degree murder on March 2 through 4, 2015 and found guilty of the responsive verdict of manslaughter in violation of La. Rev. Stat. § 14:31.[4]  On April 8, 2015, petitioner filed a motion for a new trial and a motion for post-verdict judgment of acquittal.[5]  On that same day, the state trial court denied the motions and sentenced Earl to 35 years in prison to be served at hard labor.[6]

On direct appeal to the Louisiana First Circuit, Earl's appointed counsel asserted three errors:[7]  (1) The trial court erred in denying his motion to suppress.  (2) The evidence was legally insufficient to convict him of manslaughter.  (3) The trial court erred in denying his motion for post-verdict judgment of acquittal.  On June 6, 2016, the Louisiana First Circuit affirmed, finding the claims without merit.[8]

_____

[4] St. Rec. Vol. 1 of 4, Trial Minutes, 3/2/15; Trial Minutes, 3/3/15; Trial Minutes, 3/4/15; St. Rec. Vol. 2 of 4, Trial Transcript, 3/2/15; Trial Transcript, 3/3/15; Verdict 3/4/15; St. Rec. Vol. 3 of 4, Trial Transcript, 3/4/15.  It is unclear from the record whether the second count was nol-prossed or severed.

[5] St. Rec. Vol. 1 of 4, Motion for New Trial with Incorporated Memorandum, 4/8/15; Motion for Post Verdict Judgment of Acquittal, 4/8/15.

[6] St. Rec. Vol. 1 of 4, Sentencing Minutes, 4/8/15; St. Rec. Vol. 3 of 4, Sentencing Transcript, 4/8/15.

[7] St. Rec. Vol. 3 of 4, Appellant Brief, 2015 KA 1383, 2/16/16.

[8] State v. Earl, No. 2015 KA 1353, 2016 WL 316011, at *2-9 (La. App. 1st Cir. June 6, 2016); St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2015 K 1383, 6/6/16.

By letter dated July 1, 2016, Earl sought an extension of time to file a writ application with the Louisiana Supreme Court.[9]   The Louisiana Supreme Court apparently treated Earl's letter as a writ application and denied it without stated reasons on December 5, 2016.[10] In the interim, Earl filed a writ application with the Louisiana Supreme Court on July 18, 2016.[11]  On November 7, 2016, the Louisiana Supreme Court refused to consider the writ application pursuant to La. S. Ct. Rule X § 5.[12]  Earl's November 15, 2016 request for rehearing was denied on January 9, 2017.[13]

Earl's conviction became final on March 6, 2017, 90 days after the Louisiana Supreme Court denied his first writ application, when the time expired for Earl to file a petition for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir.2003) (citing 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 200–01 (5th Cir.1998)); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir.1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup.Ct. R. 13(1).

## II.  FEDERAL HABEAS PETITION

---

[9]St. Rec. Vol. 4 of 4, Letter, 16 KO, 1329, 7/1/16.

[10]State v. Earl, 213 So. 3d 393 (La. 2016), St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2016-KO-1329, 12/5/16.

[11]St. Rec. Vol. 4 of 4, Application for Writ, 16 KH 1416, 7/18/16.

[12]State ex rel. Earl v. State, 208 So. 3d 381 (La. 2016)(mem.); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2016-KH-1416, 11/7/16.

[13]State ex rel. Earl v. State, 214 So. 3d 856 (La. 2017); St. Rec. Vol 4 of 4, La. S. Ct. Order, 2016-KH-1416, 1/9/17; Application for Rehearing C.Cr.P. 922, 12/2/16 (dated 11/15/16).

On June 5, 2017, the clerk of this court filed Earl's petition for federal habeas corpus relief in which he asserts the following grounds for relief:[14]  (1) The trial court erred in denying his motion to suppress his confession.  (2) Insufficient evidence supports his manslaughter conviction and therefore the trial court erred in denying his motion for post-verdict judgment of acquittal.

The State filed an answer in response to Earl's petition in which it concedes that the federal petition is timely and expressly waives any exhaustion defense.[15]  The State argues that Earl's claims are without merit.  Earl filed a reply reiterating his claims.[16]

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[17] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[14]Rec. Doc. No. 1.

[15]Rec. Doc. No. 10.

[16]Rec. Doc. No. 11.

[17]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Earl's petition, which, for reasons discussed below, is deemed filed in a federal court on May 2, 2017.[18]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). The State concedes and I find that Earl's petition was timely filed. The State, while acknowledging that the Louisiana Supreme Court treated Earl's July 1, 2016 letter as a writ application, claims that the court did not have a fair opportunity to address petitioner's claims because the July 18, 2016 writ application was untimely. The State nonetheless has waived the defense of failure to exhaust pursuant to 28 U.S.C. § 2254(b)(3). The State's arguments are inconsistent, and I find no support for the contention that the original writ application was not addressed

_____

[18]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Earl's federal habeas petition on June 5, 2017, when the filing fee was received. Earl did not certify under penalty of perjury the date on which he placed the original pleadings into the prison mail system. However, the prison stamped his petition as received on May 2, 2017, which is the earliest date appearing in the record on which he could have submitted his pleadings to prison officials for mailing to a federal court. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 378).

on the merits in light of the one word denial. Nevertheless, the State expressly waives exhaustion and, because Earl's claims are meritless, they may be addressed without further exhaustion. 28 U.S.C. § 2254(b)(2).

IV.    STANDARDS OF MERIT REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision " 'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]' " Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389

(2000); Penry v. Johnson, 532 U.S. 782, 792-93, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001);

Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be

applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause

if, and only if, it is so obvious that a clearly established rule applies to a given set of facts

that there could be no 'fairminded disagreement' on the question." (citation omitted)

White v. Woodall, —— U.S. ——, 134 S.Ct. 1697, 1706-07, 188 L.Ed.2d 698 (2014)

(citing Harrington v. Richter, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)),

and Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009).

"Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,'

then by definition the rationale was not 'clearly established at the time of the state-court

decision.' " White, 134 S.Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).

" 'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.' " Price v. Vincent, 538 U.S. 634, 641, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641, 123 S.Ct. 1848 (quoting Woodford, 537 U.S. at 24-25, 123 S.Ct. 357); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.    DENIAL OF MOTION TO SUPPRESS (CLAIM NO. 1)

Earl claims that the state trial court erred in denying the motion to suppress his statement to police. He alleges that the interview was conducted when he was sleep deprived and under the influence of pain medication.

Earl's counsel asserted this claim on direct appeal. The state appellate court found that Earl's alleged "chemically impaired" and "sleep deprived" state did not negate his comprehension or make him unconscious of the consequences of what he was saying. The court held that the trial court's ruling denying petitioner's motion to suppress the statement was supported by the evidence.[19] This was the last reasoned state court opinion on the issue. See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The admissibility of a confession is a mixed question of law and fact. Miller v. Fenton, 474 U.S. 104, 112 (1985); ShisInday v. Quarterman, 511 F.3d 514, 522 (5th Cir.2007) (citing Miller, 474 U.S. at 112). A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); Barnes v. Johnson, 160 F.3d 218, 222 (5th Cir.1998). In doing so, a federal habeas court must afford a presumption of correctness to state courts' findings of fact if they are fairly supported by the record. Miller, 474 U.S. at 117.

---

[19]Earl, No. 2015 KA 1353, 2016 WL 316011, at *3; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2015 KA 1383, pp. 3-6, 6/6/16

There are two inquiries to determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination. Moran v. Burbine, 475 U.S. 412, 421 (1986); Soffar v. Cockrell, 300 F.3d 588, 592 (5th Cir. 2002). First, waiver of the right must be voluntary and not the product of intimidation, coercion or deception. Moran, 475 U.S. at 421. Second, the waiver or relinquishment must be made with full awareness of the nature of the right being waived. Id. In making these inquiries, the court must consider the "totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 224 (1973). Although mental state or condition may be a significant factor in the voluntariness determination, "this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.' " Carter v. Johnson, 131 F.3d 452, 462 (5th Cir.1997) (citing Colorado v. Connelly, 479 U.S. 157, 164 (1986)). Thus, coercive police conduct is a necessary prerequisite to a conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession. Carter, 131 F.3d at 462 (citing Connelly, 479 U.S. at 163–67).

In assessing voluntariness, "trickery or deceit is only prohibited to the extent it deprives the suspect 'of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.' " Soffar, 300 F.3d at 596 (quoting

11

<u>Moran</u>, 475 U.S. at 424).  Determining whether officers engaged in coercive tactics to elicit a confession is a question of fact, and the state court's factual findings are entitled to deference when supported by the record.  <u>Pemberton v. Collins</u>, 991 F.2d 1218, 1225 (5th Cir.1993); <u>Self v. Collins</u>, 973 F.2d 1198, 1204 (5th Cir.1992); <u>see also</u> <u>Miller</u>, 474 U.S. at 112 (noting that subsidiary questions such as whether the police engaged in coercive tactics are afforded the presumption of correctness).

The habeas corpus statute obliges federal judges to respect credibility determinations made by the state court trier of fact.  <u>Pemberton</u>, 991 F.2d at 1225 (citing <u>Sumner v. Mata</u>, 455 U.S. 591, 597 (1982)).  However, if the underlying facts as determined by the state court indicate the presence of some coercive tactic, the impact that factor had on the voluntariness of the confession is a matter for independent federal determination and is ultimately a legal determination.  <u>Miller</u>, 474 U.S. at 117; <u>ShisInday</u>, 511 F.3d at 522.

Even if the confession is deemed involuntary under these standards, the Supreme Court has held that the admission of an involuntary confession is a trial error subject to harmless error analysis.  <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310 (1991).  Under these standards, to grant federal habeas relief, the trial error must have a substantial and injurious effect or influence in determining the verdict.  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).  Therefore, even if this court were to find that petitioner's Fifth

Amendment rights were violated, the court must also consider whether use of the confession at trial was harmless in determining the verdict. Hopkins v. Cockrell, 325 F.3d 579, 583 (5th Cir.2003).

In Earl's case, as required by Jackson v. Denno, 378 U.S. 368 (1964), the state trial court conducted an evidentiary hearing on the admissibility of Earl's inculpatory statements, taking testimony from Captain Miller.[20]  Miller testified that he advised Earl of his Miranda rights before conducting a recorded interview of him on January 13, 2011.[21]  Miller identified the form Earl signed, indicating that he understood his rights, waived them and consented to questioning.[22]  Miller testified that he did not make any promises to Earl or threaten or coerce him to make a statement.[23]  On cross-examination, Miller admitted that he asked Earl if he was "under any medication right now or under the influence of narcotics, alcohol of anything?" and Earl responded, "Na, I take medicine for my back."[24]  Miller further admitted that he had asked Earl if he was sleepy, and Earl responded, "Yea, I am sleepy."[25]  Miller admitted that he did not determine the

---

[20]St. Rec. Vol. 2 of 4, Trial Transcript, pp. 56-61, 3/3/15.

[21]Id., at p. 56-58.

[22]Id., at pp. 56-57.

[23]Id., at pp. 57-58.

[24]Id., at pp. 58-59.

[25]Id., at p. 59.

specific pain medication Earl was taking for scoliosis or when Earl last took the medication.[26]  Miller testified that Earl told him he was under the influence of marijuana and cocaine at the time of the crime.[27]  After hearing the testimony, the state trial court denied the motion without stated reasons.[28]  Miller subsequently testified before the jury about his interview of Earl, and the interview audio recording was played for the jury.[29]

While counsel did not file a writ application in connection with the trial court's adverse decision, he did raise the issue on direct appeal.  The Louisiana First Circuit entered its own findings, which constitute the last reasoned decision on this issue.  The appellate court considered and reviewed the evidence and testimony that was received at the suppression hearing.  After considering the evidence, the court found that Miller's testimony indicated Earl was cognizant and able to respond to questions.[30]  The court noted that while Earl may have been under the influence of marijuana and cocaine at the time of the murder, the interview occurred seven days later.[31]  In addition, it found that:

---

[26]Id.

[27]Id., at p. 60.

[28]Id., at p. 62.

[29]Id., at pp. 80-83,

[30]Earl, No. 2015 KA 1353, 2016 WL 316011, at *3; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2015 K 1383, p. 5, 6/6/16.

[31]Id.; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2015 K 1383, p. 5, 6/6/16.

> The defendant said that he was sleepy and that he took pain medicine for his scoliosis.  But there was nothing in the interview that suggested the defendant's awareness and understanding were in any way affected because of sleepiness or scoliosis medication.  While the defendant may have been tired during the interview, there was no evidence that he was intoxicated, and his answers to the detective were relevant, appropriate, and coherent. Throughout the interview, the defendant was lucid and intelligible.[32]

The court concluded that "nothing in the record before us suggests that the defendant's alleged 'chemically impaired' or 'sleep deprived' state was of such a degree as to negate his comprehension or make him unconscious of the consequences of what he was saying to Detective Miller."[33]

On federal habeas review, this court must presume that the factual determinations of the state courts supporting its legal conclusion were correct, including that Earl failed to demonstrate that he was not aware of the consequences of his statements to police officials as a result of his medicated and sleepy condition.  To overcome the presumption of correctness as to the state court's factual findings, Earl must rebut them by clear and convincing evidence, which he has not done.  In his federal habeas petition, Earl merely repeats his allegation that his "chemically impaired and sleep deprived" state rendered his inculpatory statements involuntary.  These allegations are unsupported by any evidence adduced at the motion hearing, on appeal or otherwise.  Such allegations, in and

---

[32]Id.; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2015 K 1383, pp. 5-6, 6/6/16.

[33]Id.; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2015 K 1383, p. 6, 6/6/16.

of themselves, do not render Earl's statements involuntary.  See Scott v. Michael, No. 08–1262, 2011 WL 1235223, *9 (E.D. La. 2011) ("statements made while the accused was in pain and/or under the influence of painkillers or other narcotics are not involuntary per se"); Reinert v. Larkins, 379 F.3d 76, 91–92 (3rd Cir. 2004), cert. denied, 546 U.S. 890 (2005) (defendant's post-surgery inculpatory statement provided while under sedation was voluntary).

The state court's factual determinations regarding voluntariness are supported by the record.  Therefore, this court on habeas corpus review must accept as conclusive the state court's factual determination that Earl knew the consequences of his statements. The state court's legal conclusion that Earl offered the statements voluntarily is reasonably based upon these facts.  Since the statements were voluntary as a matter of fact and law, harmless error analysis is unnecessary.  The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court precedent.  Earl is not entitled to relief on this claim.

## VI.    INSUFFICIENCY OF THE EVIDENCE AND DENIAL OF THE POST-VERDICT MOTION (CLAIM NO. 2)

Earl claims that the evidence was insufficient to prove that he was guilty of manslaughter and, as a result, the state trial court erred in denying his motion for post-verdict judgment of acquittal.  He points to inconsistent evidence about the shooting to establish the existence of reasonable doubt as to his guilt.

Earl presented this claim to the Louisiana First Circuit on direct appeal.  The court considered the claim under the standards set forth in Jackson v. Virginia, 443 U.S. 307 (1979), and related state case law, and found that the identification of the shooter presented a credibility issue and that there was sufficient evidence from which the jury could have reasonably concluded that Earl was guilty of the indicted offense of second degree murder, notwithstanding the jury's legislatively authorized responsive verdict of manslaughter and, therefore, the conviction was valid regardless whether the responsive verdict was supported by the evidence.  In addition, the appellate court found that, even if the jury rendered a compromise verdict, there was sufficient evidence to find Earl guilty of manslaughter.[34]  This was the last reasoned opinion by a state court on this issue.  Ylst, 501 U.S. at 802.

Under Jackson, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Williams v. Cain, 408 F. App'x 817, 821 (5th Cir. 2011); Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008).  Thus, to determine whether the commission of a crime is adequately

---

[34]Earl, No. 2015 KA 1353, 2016 WL 316011, at *7-9; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2015 K 1383, pp. 12-16, 6/6/16.

supported by the record, the court must review the substantive elements of the crime as defined by state law.  Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n. 16).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  See McDaniel v. Brown, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  United States v. Young, 107 F. App'x 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993)); see Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  All credibility choices and conflicting inferences must be resolved in favor of the verdict.  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.  Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985).  In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational

decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001)

(quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. Perez,

529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this

court must examine whether the state courts' denial of relief was contrary to or an

unreasonable application of United States Supreme Court precedent.[35]

Though indicted on a charge of second degree murder, the jury found Earl guilty

of the lesser offense of manslaughter.[36]  In Louisiana, manslaughter is defined as a

homicide which otherwise would be first or second degree murder, with specific intent

to kill or commit great bodily harm, "but the offense is committed in sudden passion or

heat of blood immediately caused by provocation sufficient to deprive an average person

of his self-control and cool reflection."  La. Rev. Stat. § 14:31(A)(1); State v. Logan, 34

---

[35]"The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. § 15:438.  However, on federal habeas corpus review, the court does not apply this state law "reasonable hypothesis" standard, and instead must apply Jackson. See Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992) (citing Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990)).  To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test. . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." State v. Porretto, 468 So. 2d 1142, 1146 (La. 1985); accord State v. Williams, 693 So. 2d 204, 208 (La. App. 4th Cir. 1997).  The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury.  If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." State v. Maxie, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); accord State v. Williams, 693 So. 2d at 208.  The appropriate standard for this court remains Jackson as applied under the parameters of the AEDPA.

[36]St. Rec. Vol. 1 of 4, Verdict, 3/4/15; St. Rec. Vol. 3 of 4, Trial Transcript, p. 84, 3/4/15.

So. 3d 528 (La. App. 2d Cir. 2010); <u>State v. Quiambao</u>, 833 So. 2d 1103 (La. App. 2d Cir. 2002).  In addition, manslaughter can also be "[a] homicide committed, without any intent to cause death or great bodily harm ... [w]hen the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person."[37]  La. Rev. Stat. § 14:31(A)(2)(a).

In Earl's case, the jury was instructed on both "specific intent manslaughter," La. Rev. Stat. § 14:31(A)(1), and "felony/misdemeanor manslaughter," La. Rev. Stat. § 14:31(A)(2)(a), as defined above.[38]  In connection with the latter theory, the jury also was instructed on the definitions of battery, aggravated battery and simple battery.  Under Louisiana law, battery is the intentional use of force or violence upon the person of another.  La. Rev. Stat. § 14:33.  Aggravated battery is a battery committed with a dangerous weapon.  La. Rev. Stat. § 14:34(A).  Simple battery is a battery committed without the consent of the victim.  La. Rev. Stat. § 14:35.  A dangerous weapon includes any gas, liquid, or other substance or instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm.  La. Rev. Stat. § 14:2.  Based

---

[37]La. Rev. Stat. § 14:30 and § 14:30.1 define first and second degree murder.  These provisions list the felonies of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, assault by drive-by shooting, first degree robbery, second degree robbery, simple robbery, terrorism, cruelty to juveniles, or second degree cruelty to juveniles.

[38]St. Rec. Vol. 1 of 4, Jury Instructions, pp. 9-11, 3/4/15; St. Rec. Vol. 3 of 4, Trial Transcript, pp. 77-80, 3/4/15.

on the statutory definition, proof of specific intent to kill is not necessary for the State to obtain a conviction of felony/misdemeanor manslaughter. State v. Hutcherson, 785 So. 2d 140 (La. App. 2d Cir. 2001); State v. Jones, 4 So. 3d 950 (La. App. 2d Cir. 2009).

Under La. Code Crim. P. art. 814(A)(3), manslaughter is a responsive verdict to the charge of second degree murder. The record reveals that Earl did not object to the inclusion of manslaughter as a possible verdict.[39] Thus, petitioner's conviction may be upheld, regardless whether the manslaughter verdict is supported by the evidence, if the State established the elements of second degree murder. See State ex rel. Elaire v. Blackburn, 424 So. 2d 246, 251–52 (La. 1982), cert. denied, 461 U.S. 959, 103 S. Ct. 2432, 77 L. Ed. 2d 1318 (1983) (When a defendant does not object to a trial court's instruction on a legislatively authorized responsive verdict on the basis that the evidence does not support that responsive verdict, the conviction will not be reversed regardless of whether that verdict is supported by the evidence, if the evidence is sufficient to sustain a conviction on the charged offense).

Second-degree murder is defined in relevant part by Louisiana law as "the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm." La. Rev. Stat. § 14:30.1(A)(1). The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal

---

[39]St. Rec. Vol. 3 of 4, Trial Transcript, pp. 77-80, 3/4/15.

consequences to follow his act or failure to act." La. Rev. Stat. § 14:10(1). Under Louisiana law, intent need not be proven directly, but may be inferred from the actions of the defendant and the circumstances surrounding those actions. State v. Sharlhorne, 554 So. 2d 1317, 1321 (La. App. 1st Cir. 1989); State v. Tate, 851 So. 2d 921, 930 (La. 2003) (citing State v. Brooks, 505 So. 2d 714, 717 (La. 1987)). Specific intent to kill can be implied by the intentional use of a deadly weapon, such as a knife or a gun. State v. Collins, 43 So. 3d 244, 251 (La. App. 1st Cir. 2010) (citing State v. Brunet, 674 So. 2d 344, 349 (La. 1996)).

In reaching its decision, the First Circuit found sufficient evidence to convict Earl of second degree murder[40] It further held that, even if the jury concluded that Earl did not shoot Lyons, there was sufficient evidence to convict Earl of felony/misdemeanor manslaughter under the La. Rev. Stat. § 14:31(A)(2)(a) principle of accessorial liability because the undisputed evidence demonstrated that Earl physically attacked the victim.[41] The court reasoned that had the jury believed that Earl used only his hands to beat Lyons, making him an easier target and enabling Dawson to carry out the plan to shoot Lyons, the underlying misdemeanor offense would have been simple battery.[42] It further found

---

[40]Earl, 2016 WL 3146011, at *3-*7; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2015 KA 138, pp. 6-13, 6/6/16.

[41]Id., at *7-*8; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2015 KA 138, pp. 13-16, 6/6/16.

[42]Id., at *7 (citing State v. Humphrey, 412 So. 2d 507, 521 (La. 1981) (on rehearing) (misdemeanor manslaughter committed when a battery resulted in an unintended homicide), State v. Smith, 23 So. 3d 291, 296 (La. 2009) (per curiam) ("a general principal of accessorial liability [is] that

that the underlying felony offense would have been aggravated battery if the jury believed that Earl beat Lyons with a 2x4 piece of wood.[43]

Earl does not specifically contest the sufficiency of the proof related to the essential statutory elements of the offense of second degree murder or of felony/misdemeanor manslaughter, but instead appears to challenge the sufficiency of the evidence to prove his identification as a perpetrator of the crime. Under Louisiana law, in addition to proving the statutory elements of the charged offense at trial, the State is required to prove a defendant's identity as a perpetrator. State v. Draughn, 950 So. 2d 583, 593 (La. 2007), cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007); State v. Forrest, 231 So. 3d 865, 870 (La. App. 1st Cir.2017); State v. Thomas, 192 So. 3d 291, 303 (La. App. 5th Cir. 2016); State v. Ingram, 888 So. 2d 923, 926 (La. App. 5th Cir. 2004). Where the key issue is identification, the State is required to negate any reasonable probability of misidentification. Id. However, a positive identification by only one witness is sufficient to support a conviction. State v. Williams, 3 So. 3d 526, 529 (La. App. 5th Cir. 2008). Discrepancies in witness testimony go to credibility, which

---

when two or more persons embark on a concerted course of action, each person becomes responsible for not only his own acts but also for the acts of the other, including 'deviations from the common plan which are the foreseeable consequences of carrying out the plan.' ") and State v. Couvillion, 910 So. 2d 991,999-1002 (La. App. 5th Cir. 2005) (sufficient evidence existed to convict defendant of being a principle of intentional misdemeanor manslaughter by aiding and abetting where defendant committed a simple battery by striking the victim thereby hindering victim's ability to defend himself and enabling co-defendant to rob and kill the victim)); St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 15 KA 138, p. 14, 6/6/16.

[43]Id., at *8; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 15 KA 138, pp. 14-15, 6/6/16.

is a matter left to the judgment of the trier of fact, and an appellate court cannot reassess

a credibility determination.  State v. Thomas, 13 So. 3d 603, 607 (La. App. 5th Cir.

2008).

The relevant evidence presented at trial was more than sufficient to establish, and

Earl does not contest, that Lyons died of a single gunshot wound to the chest.  To prove

Earl's identity as the perpetrator of the crime, the State introduced evidence from three

eyewitnesses.  Richie Martin testified that he and Lyons were waiting in Lyons's Geo

Tracker when a dark-colored car pulled up in front of them almost hitting the front

bumper of the Tracker.[44]   As Lyons began to exit the Tracker, a white vehicle

approached.[45]  Lyons jumped back into the car and yelled for Martin to call the police.[46]

Magee and a second man exited the dark vehicle and approached the Tracker.[47]  Magee

hit Lyons several times with a 2x4.[48]  The second man, who had been a passenger in

Magee's car, shot Lyons.[49]  Martin did not know the shooter's name but testified that Earl

looked similar to the shooter.[50]  The shooter then approached Martin's side of the vehicle

---

[44]St. Rec. Vol. 2 of 4, Trial Transcript, pp. 12-13, 16, 37, 3/3/15.

[45]Id., at p. 16

[46]Id.

[47]Id., at pp. 17, 22, 24.

[48]Id., at pp. 17, 31, 33.

[49]Id., at pp. 18, 39.

[50]Id., at pp. 15, 18.

and pointed the gun at Martin's face, but Magee grabbed the shooter's arm and they both fled the scene.[51]  Martin was adamant that Magee was not the shooter.[52]  On cross-examination, Martin admitted that he originally falsely identified an innocent person but claimed he lied because he was scared.[53]

Donald Dawson testified he pled guilty to manslaughter and received a sentence of 10 years in exchange for his testimony.[54]  He testified that on the night of the murder, he and Starnes went to Magee's home.[55]  Magee told Dawson he had to take care of something and asked him to follow him.[56]  Dawson and Starnes, who were in a white vehicle, followed Magee and Earl, who were in a black vehicle, to Jenkins Road.[57] Magee pulled into a driveway off Jenkins Road, stopping his vehicle directly in front of the victim's vehicle, while Dawson pulled into the next driveway about 30 to 40 feet away.[58]  As Dawson walked toward the other vehicles, he saw Earl beating the victim

---

[51]Id., at pp. 19-21.

[52]Id., at pp. 18, 37, 39.

[53]Id., at pp. 27-29, 32, 40.

[54]Id., at pp. 41, 49-50.

[55]Id., at p. 42.

[56]Id., at p. 49.

[57]Id., at p. 43.

[58]Id., at pp. 43-44.

with a board.[59]  He then heard a gun shot and saw Earl pointing a gun at the windshield

of the victim's vehicle.[60]  Dawson and Starnes then fled the scene.[61]  Several days later,

Dawson identified Earl as the shooter from a photo lineup.[62]  Dawson testified that he

was absolutely certain that Earl was the shooter.[63]  Dawson denied having a gun that

evening and denied giving Earl the gun.[64]

Tessie Starnes testified that she was with Dawson on the night of murder.[65]

Starnes recalled that she and Dawson left Magee's house in Dawson's white vehicle and

followed Magee and Earl, who were in a dark vehicle, to Jenkins Road.[66]  She saw Earl

hit the victim with a board and then shoot the victim.[67]  Starnes was unwavering in her

testimony that Earl was the shooter.[68]  On cross-examination, Starnes admitted that when

she was initially interviewed by Detective Miller, she told him that she never saw the

---

[59]Id., at pp. 44-5, 51.

[60]Id., at pp. 45-46, 55.

[61]Id., at pp. 46, 48.

[62]Id., at p. 47.

[63]Id., at pp. 47-48.

[64]Id., at 50-51, 53-54.

[65]Id., at 110.

[66]Id., at pp. 110-111.

[67]Id., at pp. 112, 126-27, 130-31.

[68]Id., at pp. 113, 117, 119, 126, 138.

face of the shooter, but claimed that she lied during the first two interviews because she was scared.[69] She admitted that Dawson had a gun when they drove to Jenkins Road, although she initially told Miller that Dawson did not have a gun.[70] Starnes testified that, while in jail, she saw Earl's picture in a newspaper and recognized him as the shooter.[71] She then gave a third statement to Miller, identifying Earl as the person who shot Lyons.[72]

Detective Miller testified that, during his first interview of Martin, he showed him a photo lineup that did not include photographs of Magee, Earl or Dawson and that Martin identified Bobby Ratliff as the shooter.[73] Martin later retracted that identification and told Miller that he had identified Ratliff because he was scared of Magee.[74] Miller showed Dawson a photo lineup, and he identified Earl as the person who struck Lyons with a 2x4 and shot him.[75] Miller testified Earl gave a statement on January 13, 2011 at

---

[69]Id., at pp. 119-120, 125-126, 129, 131, 132, 135, 136, 138.

[70]Id., at pp. 127, 133.

[71]Id., at pp. 129, 137

[72]Id., at pp. 112-113, 123, 137

[73]Id., at pp. 77-79, 87.

[74]Id., at pp. 78-79, 87.

[75]Id., at pp. 79-80.

4:00 p.m. during which Earl admitted he shot Lyons.[76]  Miller interviewed Starnes three times and, on one of those occasions, Starnes told Miller that she saw Earl shoot victim.[77]

Earl testified in his own defense and denied shooting Lyons.[78]  Earl claimed that he went to Jenkins Road to fight Lyons for stealing Magee's tools and that he hit the victim with his hands, not with a board.[79]  According to Earl, Dawson shot Lyons.[80]  Earl then took the gun from Dawson and gave it to Magee, and they fled the scene.[81]  Earl admitted that he gave a statement to Detective Miller during which he confessed to shooting Lyons, but claimed he lied in his interview because he was afraid of Magee, whom he feared might do something to his family.[82]

Based on the verdict, the jury apparently found the State's evidence and testimony to be the more credible version of the facts.  Earl's argument in this regard is essentially that the jury should have not have believed the testimony of the eyewitnesses.  In short, the trial record reflects a classic credibility contest over witness testimony, including what inferences should be drawn from and the weight to be assigned to evidence.  These

---

[76]Id., at pp. 80-83, 92-93.

[77]Id., at pp. 89-92, 94.

[78]St. Rec. Vol. 3 of 4, Trial Transcript, pp. 4, 21, 27, 3/4/15.

[79]Id., at pp. 5, 18-19, 22.

[80]Id., at pp. 5, 6, 21, 22.

[81]Id., at pp. 6-7, 24.

[82]Id., pp. at 4, 22, 24-25.

are functions the law assigns to the jury, which resolved the arguments asserted by Earl against him. Jackson limits this court's review to the evidence before the trier of fact and does not allow this court to reassess the weight and credibility of the evidence. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781 (finding that such matters are left to the factfinder). Determination of the credibility of a witness is within the province of the jury and is not to be disturbed on habeas review. See Passman v. Blackburn, 652 F.2d 559, 569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions); Holderfield v. Jones, 903 F.Supp. 1011, 1018 (5th Cir. 1995) (citing United States v. Hatch, 926 F.2d 387, 399 (5th Cir. 1991)) (The habeas court should defer to the jury's resolution of credibility determinations and justifiable inferences of fact.). The jury's finding was reasonable, supported by the evidence and testimony and should not be disturbed by this court.

I find that there was more than sufficient evidence upon which a rational trier of fact could have found that the essential elements of second degree murder were proven beyond a reasonable doubt. The evidence was sufficient to establish that Earl shot Lyons, with the intent to kill or inflict great bodily harm, causing his death. Alternatively, the evidence was sufficient to establish that Earl beat the victim, with either his hands or a 2x4, thereby committing an aggravated or simple battery, and that the beating made Lyons an easier target, enabling Dawson to shoot and kill Lyons. Because the state courts' rejection of Earl's insufficient evidence claim does not represent an unreasonable

application of Supreme Court law to the facts of this case, I find that Earl's claim is without merit and does not warrant federal habeas relief.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Earl's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[83]

New Orleans, Louisiana, this ___20th___ day of March, 2018.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[83]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.